## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

Jenna Marie Duncan, individually and on
behalf of all others similarly situated,

              Plaintiff,

      v.

Kahala Franchising, L.L.C.,

              Defendant.

------------------------------------------------------- x

CASE NO. 2:22-cv-07841

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Jenna Marie Duncan ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Kahala Franchising, L.L.C. ("Defendant"), based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

## SUMMARY OF THE ACTION

1.     This class action seeks to challenge Defendant's false and deceptive practices in the marketing and sale of a number of its Cold Stone Creamery ice creams and sorbets (the "Products").[1]

2.     Specifically, Defendant uses the names of specific ingredients in the naming of the Products (e.g., "Pistachio" and "Mango"), despite the fact that the Products do not contain these specified ingredients.

---

[1] The Products are fully defined in Paragraph 11.

3.     This deceptive marketing practice defies reasonable consumers' expectations. Consumers reasonably expect ice cream products to contain the ingredients plainly described in their name.

4.     Plaintiff and other consumers purchased the Products and paid a premium price based upon their reliance on Defendant's representations that the Products contained specific ingredients. Had Plaintiff and other consumers been aware that the Products do not contain their represented ingredients, they would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.

## PARTIES

### I.   Plaintiff

5.     Plaintiff Jenna Marie Duncan is a citizen of New York and currently resides Farmingdale, New York.  In or around July 2022, Ms. Duncan purchased the Cold Stone Pistachio Ice Cream Product from a Cold Stone Creamery store in Levittown, New York. Based on the name "Pistachio", Plaintiff reasonably believed that the Pistachio ice cream she purchased from Defendant contained pistachio. Moreover, she did not see any statement or other information in the store indicating that the Product did not contain pistachio. Had she known that the Product did not contain pistachio, she would not have purchased it, or would have paid significantly less for it.

### II.  Defendant

6.     Defendant is an Arizona corporation with its principal place of business in Scottsdale, Arizona. Defendant owns, manages, and operates Cold Stone Creamery, an international ice cream retail chain. Defendant owns and operates nearly 1,000 stores in the

United States and manufactures a variety of ice cream related products, including the Products at issue in this case.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as members of the proposed class are citizens of states different than Defendant's home state; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

8.      This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in New York, and intentionally and purposefully placed the Products into the stream of commerce within New York.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased the Product in this District.

## FACTUAL BACKGROUND

10.     Defendant is responsible for the manufacturing, marketing, labeling, advertising, and sale of Cold Stone Creamery ice creams and sorbets, including the Products at issue here.

11.     The Products at issue in this action include the following:

        a.      Pistachio Ice Cream;

        b.      Mango Ice Cream;

        c.      Coconut Ice Cream;

        d.      Orange Sorbet;

e.      Orange Ice Cream;

f.      Mint Ice Cream; and

g.      Butter Pecan Ice Cream.

12.      Unfortunately for consumers, Defendant engages in false and misleading advertising for the Products to gain a competitive edge in the market, all at the expense of unsuspecting consumers.

13.      Specifically, the in-store advertising of the Products calls out specific ingredient(s) by name (e.g., "Pistachio"), leading consumers to reasonably believe that the Products contain the specified ingredient(s):





14.     Moreover, there is nothing near these representations, or even visible in the store when ordering, that informs consumers that the Products do not contain their promised ingredients.

15.     Based on the foregoing marketing and advertising, reasonable consumers purchase the Products with the expectation that the Products contain their advertised ingredients.

16.     However, despite the Products' names, the Pistachio Ice Cream contains ***no pistachio***, the Mango Ice Cream contains ***no mango***, the Coconut Ice Cream contains ***no coconut***, the Orange Sorbet and Orange Ice Cream contain ***no orange***, the Mint Ice Cream contains ***no mint***, and the Butter Pecan Ice Cream contains no butter.

17.     Instead, as is revealed by Defendant's ingredient list on its website,[2] which Plaintiff did not visit prior to her purchase of the Products, the Products are merely *flavored* after their named ingredients. The Products use a mixture of highly processed ingredients to mimic the flavor of the fruits, nuts, and other ingredients specified in the Products' names. For example, the Pistachio Ice Cream Product is comprised of the following ingredients: "SWEET CREAM ICE CREAM [Cream, Nonfat Milk, Sugar, Corn Syrup, Whey, contains less than 1% of: Guar Gum, Cellulose Gum, Carrageenan, Mono and Diglycerides, Polysorbate 80, Annatto (color)], ***PISTACHIO FLAVORING (Water, Ethanol, Propylene Glycol, Natural & Artificial Flavor, Yellow 5, Blue 1***)." (emphasis added).

18.     When consumers purchase pistachio ice cream, they expect pistachios, not a concoction of processed ingredients. Indeed, propylene glycol is a synthetic product which is used in antifreeze and to "generate vapor and act as a carrier for nicotine and flavorings."[3] Ethanol is a grain alcohol commonly used as a type of fuel.[4] Studies have also shown cause for concern over the use of Yellow 5 and Blue 1 food colorings.[5][6][7] This is not what consumers expect when they purchase ice cream at a premium price.

---

[2] The ingredient list on Defendant's website can be found at the following URL: https://www.coldstonecreamery.com/nutrition/pdf/CSC_Ingedient%20Statement-Ice%20Cream_Yogurt_Sorbet.pdf.

[3] M. Woodall, *et al. E-cigarette constituents propylene glycol and vegetable glycerin decrease glucose uptake and its metabolism in airway epithelial cells in vitro*, December 18, 2020, American Physiological Society, American Journal of Physiology, https://journals.physiology.org/doi/full/10.1152/ajplung.00123.2020

[4] University of Illinois, *Ethanol, What Is It?*, https://web.extension.illinois.edu/ethanol/

[5] Sarah Kobylewski, et al., *Toxicology of Food Dyes*, 2012, National Library of Medicine, Int J Occup Environ Health, https://pubmed.ncbi.nlm.nih.gov/23026007/

[6] Daniel More, MD., *Potential Risks of Yellow 5 (Tartrazine)*, Verywell Health, https://www.verywellhealth.com/tartrazine-free-diet-83227

[7] Michael F. Jacobson, Ph.D, Center For Science In The Public Interest, *Food Dyes A Rainbow of Risks*, https://www.cspinet.org/sites/default/files/attachment/food-dyes-rainbow-of-risks.pdf

19.     Indeed, competitor ice cream products typically include the ingredients plainly stated in their name. For example, Haagen-Dazs Pistachio Ice Cream[8] contains the following ingredients: Cream, Skim Milk, Liquid Sugar (Sugar, Water), Water, ***Pistachios***, Egg Yolks, Sugar, Coconut Oil, Guar Gum, Salt, Natural Flavors, Carrageenan. Ice cream brand Ben and Jerry's Pistachio ice cream also includes actual pistachios.[9] Even Thrifty brand ice cream, a less premium brand than Cold Stone Creamery, has pistachio in its pistachio ice cream.[10]

20.     Even other Cold Stone Creamery ice creams and sorbets contain the ingredient stated in their name. For example, its strawberry ice cream contains strawberry, banana ice cream contains banana, and its chocolate hazelnut ice cream contains chocolate and hazelnut.[11]

21.     Clearly, the Products are the exception, missing the very ingredients they are named after. This is not what consumers expect.

22.     The reasonable belief that the Products contain the ingredients stated in their name was a significant factor in Plaintiff and other class members' decisions to purchase the Products. The missing ingredients are premium ingredients, and Cold Stone Creamery is considered by Plaintiff and class members to be a premium ice cream brand. For these reasons, consumers would rightfully expect the Products to contain their stated ingredients, rather highly processed flavors and artificial coloring.

23.     Because the Products do not contain their promised ingredients, they are falsely and deceptively advertised in violation of the laws set forth below.

---

[8] https://www.icecream.com/us/en/brands/haagen-dazs/products/pistachio-ice-cream
[9] https://www.benjerry.com/flavors/pistachio-pistachio-ice-cream
[10] https://www.instacart.com/products/3075323-thrifty-pistachio-ice-cream-48-oz#:~:text=Ingredients,Turmeric%2C%20Annatto%20Added%20As%20Color
[11] *See* Footnote 2.

24.     As the entity responsible for the development, formulation, manufacturing, marketing, advertising, distribution and sale of the Products, Defendant knew or should have known that the Products falsely and deceptively represent to contain ingredients that they do not contain.

25.     Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's naming of the Products, and reasonably believe they contain their stated ingredients. Nonetheless, Defendant deceptively advertises the Products in order to deceive consumers and gain an unfair advantage in the market.

26.     Consumers are willing to pay more for the Products based on the belief that they contain their advertised ingredients. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth about them. Thus, through the use of misleading representations, Defendant commands a price that Plaintiff and the Class would not have paid had they been fully informed.

27.     Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## CLASS DEFINITION AND ALLEGATIONS

28.     Plaintiff brings this matter on behalf of herself and those similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" or "Rule"), Plaintiff seeks to represent the following Class (herein, the "New York Class" or "Class"):

> All residents of New York who purchased the Product in New York for personal, family, or household consumption and not for resale within the applicable statute of limitations.

29.     Plaintiff reserves the right to amend the Class definitions if discovery or further investigation reveal that the Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

30.     The following people and entities are excluded from the Class: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

31.     This action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

32.     **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's records. At a minimum, there likely tens of thousands of Class members.

33.     **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

   a.   whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

b.  whether reasonable consumers would rely upon Defendant's naming of the Products and reasonably believe the Products contain their stated ingredients;

c.  whether Defendant knew or should have known its representations were false or misleading;

d.  whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

e.  whether certification of the Class is appropriate under Rule 23;

f.  whether Plaintiff and the members of each Class are entitled to declaratory, equitable, and/or other relief, and the scope of such relief; and

g.  the amount and nature of the relief to be awarded to the Plaintiff and the Class, including whether Plaintiff and the Class are entitled to punitive damages.

34.  **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Products. Plaintiff and the members of the Class relied on the representations made by the Defendant about the Products prior to purchasing the Products. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue.

35.  **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Class as her interests do not conflict with the interests of the members of the proposed Class she seeks to represent, and she has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

36.   **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Class. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

37.   **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### (*On Behalf of Plaintiff and the Class*)

38.   Plaintiff repeats and realleges Paragraphs 1-37 as if fully set forth herein.

39.   New York General Business Law ("GBL") § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

40.   The conduct of Defendant alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Class Members seek monetary damages.

41.     Defendant misleadingly, inaccurately, and deceptively advertised and marketed its Products to consumers.

42.     Defendant's improper consumer-oriented conduct—including naming and representing that the Products contain ingredients that they do not have (e.g., Pistachio, Mango, Coconut, Orange, Mint, and Butter) —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the Class to purchase and pay a premium for Defendant's Products and to consume the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

43.     Plaintiff and the Class have been injured inasmuch as they paid a premium for the Products that did not contain their advertised ingredients, contrary to Defendant's representations. Accordingly, Plaintiff and the Class received less than what they bargained and/or paid for.

44.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class have been damaged thereby.

45.     As a result of Defendant's "unlawful" deceptive acts and practices, Plaintiff and the Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350
### (*On Behalf of Plaintiff and the Class*)

46.     Plaintiff repeats and realleges Paragraphs 1-37 as if fully set forth herein.

47.     New York General Business Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

48.     GBL § 350-a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. …

49.     Defendant's naming of the Products after specific ingredients serves as materially misleading representations inasmuch as they misrepresent that the Products contain their specified ingredients when they do not.

50.     Plaintiff and Class members have been injured inasmuch as they relied upon the advertising of the Products and paid a premium for products that did not contain the ingredients they promised, contrary to Defendant's representations. Accordingly, Plaintiff and Class members received less than what they bargained and/or paid for.

51.     Defendant's advertising of the Products induced Plaintiff and the Class to buy Defendant's Products.

52.     Defendant made the foregoing untrue and/or misleading representations willfully, wantonly, and with reckless disregard for the truth.

53.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were exposed to Defendant's material misrepresentations.

54.     As a result of Defendant's "unlawful" deceptive acts and practices, Plaintiff and the Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF BREACH OF EXPRESS WARRANTY STATUTE**
**N.Y. U.C.C. Law § 2-313**
(*On behalf of Plaintiff and the Class*)

55.     Plaintiff repeats and realleges Paragraphs 1-37 as if fully set forth herein.

56.     Express warranties by a seller of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description.

57.     Plaintiff and members of the Class formed a contract with Defendant at the time they purchased the Products. As part of that contract, Defendant explicitly named the Products after specific ingredients (e.g., "Pistachio"), unambiguously representing to consumers that the Products contain those ingredients.

58.     These representations constitute an express warranty and became part of the basis of the bargain between Plaintiff and members of the Class, on the one hand, and Defendant, on the other.

59.     Defendant made the representations to induce Plaintiff and members of the Class to purchase the Products, and Plaintiff and the Class relied on the representations in purchasing the Products.

60.     All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiff and the Class.

61.     Defendant breached the express warranties about the Products because, as alleged above, the Products do not contain their advertised ingredients.

62.     As a result of Defendant's breaches of express warranty, Plaintiff and Class members were damaged in the amount of the premium price they paid for the Products, in amounts to be proven at trial.

63.     In or around October 2022, Plaintiff discovered this breach. On October 7, 2022, Plaintiff, on behalf of herself and others similarly situated, sent a notice and demand letter to Defendant providing notice of Defendant's breach.

### FOURTH CLAIM FOR RELIEF
### VIOLATIONS OF BREACH OF IMPLIED WARRANTY STATUTE
### N.Y. U.C.C. Law § 2-314
### (*On behalf of Plaintiff and the Class*)

64.     Plaintiff repeats and realleges Paragraphs 1-37 as if fully set forth herein.

65.     New York's implied warranty of merchantability statute provide that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. Law § 2-314.

66.     New York's implied warranty of merchantability statutes also provide that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." N.Y. U.C.C. Law § 2-314(2)(f).

67.     Defendant is a merchant with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to New York consumers.

68.     By advertising the Products in its stores with the names of specific ingredients, Defendant made an implied promise in the Products' advertising that the Products contain these specific ingredients. The Products, however, have not conformed to these promises because the Products do not contain the ingredients plainly stated in their names. Plaintiff, as well as other putative class members, did not receive the goods as impliedly warranted by Defendant to be merchantable.

69.     Therefore, the Products are not merchantable under New York law and Defendant has breached its implied warranty of merchantability in regard to the Products.

70.     If Plaintiff and members of the Class had known that the Products' names were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the Class have suffered injury and deserve to recover all damages afford under the law.

71.     In or around October 2022, Plaintiff discovered this breach. On October 7, 2022, Plaintiff, on behalf of herself and others similarly situated, sent a notice and demand letter to Defendant providing notice of Defendant's breach.

## FIFTH CLAIM FOR RELIEF
### IN THE ALTERNATIVE, UNJUST ENRICHMENT
#### (*On behalf of Plaintiff and the Class*)

72.     Plaintiff repeats and realleges Paragraphs 1-37 as if fully set forth herein.

73.     To the extent the Court finds that Plaintiff and the members of the Class did not form a contract with Defendant at the time they purchased the Products, Plaintiff brings this claim for unjust enrichment in the alternative, individually and on behalf of the Class.

74.     Plaintiff and the Class purchased Defendant's Products and paid a premium for the Products. Defendant misrepresented that the Products contained specific ingredients, which commanded a price premium on the market.

75.     Defendant had knowledge of such benefit and obtained the benefit by its misrepresentations because the misrepresentations induced reasonable consumers to purchase the Products when they would not otherwise have purchased them or would have purchased them at a lower price.

76.     Defendant appreciated this benefit and knowingly accepted it at the expense of, and to the detriment of, Plaintiff and the Class. Defendant currently retains this benefit.

77.     Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefit was obtained by Defendant's misconduct detailed at length in this Complaint.

78.     Equity cannot in good conscience permit Defendant to be economically enriched for such action at the expense of Plaintiff and the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed Class, respectfully request that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

a.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

b.   A declaration or declaratory judgment that Defendant's conduct has violated and continues to violate the statutes and laws cited herein;

c.   An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and members of the Class to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice;

d.   An award of damages, including all available statutory and punitive damages, pursuant to the statutes and the causes of action pled herein;

e.   Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and applicable, to prevent Defendant from retaining the benefit of its wrongful conduct;

f.   an award of all recoverable costs and expenses, including reasonable fees for Plaintiff's attorneys; and

g.   an award of pre- and post-judgment interest to Plaintiff and members each of the Class if applicable; and, ordering further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff and members of the Class demand a jury trial on all issues so triable.

**CUSTODIO & DUBEY, LLP**

18

By: _____

Robert Abiri
*E-mail: abiri@cd-lawyers.com*
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899

*Attorney for Plaintiff and the
Putative Class*
**TREEHOUSE LAW, LLP**
Joshua Nassir (SBN 318344) (*pro hac
vice* forthcoming)
10250 Constellation Blvd., Suite 100
Los Angeles, CA 90067
Telephone: (310) 751-5948
jnassir@treehouselaw.com

19