FILED
CLERK

8:37 am, Sep 05, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
JENNA MARIE DUNCAN,                : 22-cv-07841-GRB-AYS
                                   :
              Plaintiff,           :
                                   :
   - versus -                      : U.S. Courthouse
                                   : Central Islip, New York
KAHALA FRANCHISING, LLC,           :
                                   :
                                   : July 25, 2023
              Defendant            : 2:00 p.m.
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES DISTRICT JUDGE

**A P P E A R A N C E S:**
(**VIA VIDEO/AUDIO**)


**For the Plaintiffs**:        **Joshua Nassir, Esq.**
                               Treehouse Law, LLP
                               10250 Constellation Blvd
                               Los Angeles, CA 90067


**For Defendants**:            **Kyle S. Willems, Esq.**
                               **Bryce D. Riddle, Esq.**
                               Bassford Remele PA
                               100 South 5th Street
                               Minneapolis, MN 55402


**Transcription Service**:     **Transcriptions Plus II, Inc.**
                               61 Beatrice Avenue
                               West Islip, New York 11795
                               RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Calling case CV-22-7841, *Duncan v.*

2  *Kahala Franchising, LLC.*

3          Counsel, please state your appearance for the

4  record.

5          MR. NASSIR:  Good afternoon, your Honor.  This

6  is Joshua Nassir on behalf of plaintiff Duncan.

7          MR. WILLEMS:  Good afternoon, your Honor.  Kyle

8  Willems, W-I-L-L-E-M-S, along with my colleague Bryce

9  Riddle and local counsel Glen Greenberg on behalf of

10  defendant Kahala Franchising.

11          THE COURT:  Great who'll take the lead on this?

12          MR. WILLEMS:  I will, your Honor.

13          THE COURT:  Okay.  Very good.

14          All right.  Counsel, we're here for a pre-

15  motion conference.  You've both done a great job, you've

16  all done a good job on the papers so I am sort of

17  familiar with this and I do reserve the right to decide

18  the motion, deem it made and decide it.  I don't know if

19  I'll do that today or not, but that means you should feel

20  free to make all your arguments.

21          So let me go to defense first because you want

22  to make the motion, so why don't you outline it for me,

23  please?

24          MR. WILLEMS:  Sure.  Thank you, your Honor.

25  Well, really this case and this motion hinges on what is

3

Proceedings

1  reasonable for a consumer in the circumstances pled in

2  plaintiff's complaint?

3          In this case, the question is what is

4  reasonable for a consumer as a broad member of the public

5  when they went into a Cold Stone Creamery in New York and

6  purchased ice cream from a tub that had a placard on it

7  that said pistachio?

8          And based on plaintiff's arguments, which

9  really hinge on Sections 349 and 350 of New York's

10  General Business Law, that's basically the Deceptive

11  Trade Practices, that it comes down to what that consumer

12  faces when they purchase that product.  In the complaint

13  there's a picture of the tubs of ice cream with the

14  placard with each flavor.

15          What I'd like to do briefly, your Honor, is

16  show that even under Rule 12's heightened pleading

17  standard there are really no issues of factor law that

18  need to be resolved through discovery or some other

19  mechanism.  And to show that, I'm going to quickly go

20  through the claims for relief.

21          As I mentioned before, the main claims for

22  relief are claims 1 and 2 which is those trade practices

23  claims.

24          The first one is Section 349.  So that deals

25  with, and I quote, "Deceptive acts or practices in the

4

Proceedings

1    conduct of any business, trade or commerce.

2             THE COURT:  Yes.

3             MR. WILLEMS:  Section 350 is very similar.

4    It's false advertising.  And your Honor, I'm sorry, I'll

5    try and paraphrase because I know you know this.

6             THE COURT:  No, counsel, just to tell you I've

7    written on similar cases, right?  I've written a lot of

8    349, 350 cases including some in the sort of consumer

9    purchasing context, so I am familiar with the background.

10             I guess I would jump ahead a little bit.  I'm

11   going to try to direct you.

12             I think you've got a problem on your standing

13   argument.  In other words, I think the Second Circuit

14   case law here is such that if there's a claim on the

15   statute, she didn't have to purchase the mango and so

16   forth to make this all work.  I think Second Circuit case

17   law suggests otherwise.

18             But I'm much more interested in your argument

19   about whether a consumer buying pistachio ice cream, and

20   the only representation in the complaint is a picture,

21   one word, pistachio on a tub of ice cream, whether they

22   should expect pistachio ingredients, real pistachio in

23   there.  And I'm looking at the cases from the southern

24   district on vanilla, but then there's the *Blueberry Bagel*

25   case.  They don't all seem to square up to me.  So where

5

Proceedings

1   does this fall on that continuum?

2           MR. WILLEMS:  Well, your Honor, that's right

3   where I was going so I'm glad you asked that because I

4   spent a lot of time reading these cases to figure out

5   what makes a case fall under the camp of justifying being

6   dismissed on a Rule 12 and what justifies a case

7   surviving a Rule 12.  And there are a few key things that

8   these cases have in common, and not just by my

9   impression, but they actually expressly say that.

10          So let's talk about the cases that courts have

11  routinely held should be dismissed on Rule 12 in these

12  circumstances.

13          So the standard is not really at issue.  Right?

14  We all understand it's a reasonable consumer test.  You

15  look to see if there's something that's material,

16  misleading, and you look to the context, the whole

17  context, and this is important, of the experience that

18  that consumer had.

19          Now, I'll just give another example.  Right?

20  So if you buy vitamin supplements or something like that,

21  you look at not just the front of the bottle but you

22  rotate it around.  What do the ingredients say?  And you

23  make a determination as to what is reasonable.

24          And so there's one thing that is not in the

25  parties' letter that I do quickly want to bring to the

6

Proceedings

1    Court's attention before I talk about whether this case

2    falls under the camp of should it be dismissed or not.

3            Since we drafted our letter briefs to the Court

4    we've had Kahala Franchising investigate the underlying

5    facts because to be honest, your Honor, I know this isn't

6    legally persuasive to say, but I've been a regular

7    customer of Cold Stone and what my recollection of what

8    Cold Stone is famous for is you go there, you see tubs of

9    ice cream.  Above it are boards that say -- you could do

10   two things pretty much.  You can pick a recommended

11   sundae, so it'll have a picture of let's say vanilla ice

12   cream with chocolate sauce and Heath bars pounded into

13   it, or you can make your own.  And so it'll have a three-

14   step.  It'll say pick your flavor.  So you look at the

15   tubs, you pick your flavor.  Then they take that ice

16   cream and they actually slap it on, you know, the

17   proverbial cold stone and they use these metal, I don't

18   know, they kind of look like flippers.  They bash in the

19   ingredients you pick, or they call them mix ins, and then

20   you put it in a cup.

21           THE COURT:  All right.  Counsel, I have to

22   interrupt you one second.  I guess in the way of full and

23   fair disclosure, I am familiar with the process.  Right?

24   So I haven't done it in a number of years, but I have

25   been there and watched them lather the ice cream together

7

Proceedings

1   with the chips so they're not so whatever and I have

2   been through that.  So I'll just put that out there for

3   you.

4           MR. WILLEMS:  Well thank you, your Honor.

5   Well, I bring that up not to bore you but because we just

6   sent a letter to counsel which in fairness to counsel,

7   I'm sure he hasn't had a chance to read it because I sent

8   it last night and this has been developing for us

9   quickly.  But we had the store reps send us pictures and

10  be able to tell us that they'll be able to testify as to

11  what the actual shopping experience would have been

12  because the case law says even if it's not in the

13  complaint, we have to look at the full context.  It's

14  kind of unique in a Rule 12 analysis like that.  And then

15  the full context will show to the Court, if we get to

16  bring our motion, that what is contained in the

17  complaint, which is simply that plaintiff was presented

18  with a placard that said pistachio and this bin of

19  pistachio ice cream isn't actually what she was presented

20  with.  She walked in and it was just like my experience,

21  right directly above that was a sign that says pick your

22  flavor.

23          And so why is that important?  Well, looking at

24  the whole context, the gravamen of this complaint is that

25  there was no indication that this was anything but

8

Proceedings

1  pistachio ice cream that may have contained real

2  pistachios.  And that is, quite frankly, untrue.  There's

3  literally a sign above it that says pick your flavor and

4  add your mash-ins, or whatever you call it.  And the

5  thing next to those tubs of ice cream is all the things

6  you can have it added to it.

7            And so that's one thing I want to add.  But

8  then turning to which camp does this fall in regardless,

9  the cases that generally get dismissed have these things

10  in common.  And again, this is case law, not just my

11  impression.

12            First, that they don't have anything on the

13  packaging or in the advertisements that say the words

14  something like contains or sometimes it's made with,

15  anything that indicates it actually contains the

16  ingredient that the flavor may be mimicking.

17            The second thing is whether or not the word at

18  issue can be used as simply a noun or both as a noun or

19  an adjective.

20            So that's kind of the center of the vanilla

21  cases.  Vanilla can be a flavor and it can be an

22  ingredient.  Vice versa if you look at the *Colpitts* case

23  that plaintiffs rely on, it talks about a smokehouse

24  flavor of an almond, but it can't be both.  It can't be

25  the noun and the adjective.  So that's the next huge

9

Proceedings

1  differentiator.

2          And then again, when you look at the whole

3  context, is there anything that indicates it's a flavor?

4  In this case, well we're going to present to the Court

5  there's a sign that says it is in fact a flavor.

6          So I would say when you look at those three

7  things, this falls squarely into the camp of the cases

8  that tend to have these claims dismissed.

9          Now, what does the other camp look like?  Your

10  Honor, you brought up the blueberries case which was

11  about a blueberry bagel.  And so in that case, you

12  naturally see what you may think the ingredient is.  In

13  that case, the plaintiff picked up a blueberry bagel and

14  it had chunks in it, what appeared to be blueberry.

15  Well, it turns out that was not the case.  So that's one

16  example of actually indicating that something contains an

17  ingredient.

18          That's not the case here.  If you look at the

19  picture, it's just this green goop and frankly, you look

20  at all the other flavors, there's no chunks of anything

21  in them.

22          The next would be, again, that the product

23  advertises made with or contains.  That might help get

24  over a Rule 12 analysis but that's not the case here.

25          So that would be -- I want to differentiate

10

Proceedings

1 those two camps to explain the difference between why I

2 think this case on the merits should be dismissed versus

3 some of the cases that have dealt with I would say

4 deceptive flavoring issues and has not been dismissed.

5            I will stop talking for a second about the

6 deceptive trade claims to see, your Honor, do you have

7 any questions on that?

8            THE COURT:  No, I'm good.  Keep going.

9            MR. WILLEMS:  Okay.  The next claim then is the

10 expressed warranty claim.  Well, obviously under the UCC

11 and expressed warranty, there actually has to be an

12 expressed warranty to set the basis for a claim.  In this

13 case, the plaintiffs have not specifically pled what is

14 that expressed warranty or what is that affirmative

15 factor promise that the buyer will relate to the goods

16 that becomes part of the bargain?

17            I think this would be a different case, again,

18 if it said something made with real pistachio or

19 something like that, but that's not the case literally.

20 Even if we just take the complaint on its face, it just

21 says pistachio and nothing else.  So I don't see an

22 expressed warranty that actually says by purchasing this

23 product you are getting something that says it contains

24 actual pistachio, nor is that anywhere in the complaint.

25            Turning to the claim for a breach of implied

11

Proceedings

1  warranty, frankly, it largely has the same problem.  You

2  know, an implied warranty says that -- really focuses on

3  the merchantability of the good and does it conform, this

4  is a direct quote, "to the promises or affirmations of

5  fact made on the container label."

6          Again, in this case, there is nothing that says

7  that this product contains or implies in any meaningful

8  fashion that it contains real pistachio.  More

9  importantly, even if it did, does this product no longer

10  become merchantable?

11          In one case, one of the vanilla cases, it

12  talked about soy milk and saying okay, the products may

13  not contain the requisite levels of real soy that

14  plaintiffs are complaining of, but is it literally unfit

15  to drink?  Is it unfit to have a vanilla flavor?  The

16  answer is no.

17          The last issue is the unjust enrichment claim.

18  Courts are pretty clear on that in cases cited by both

19  parties that if the claims are merely duplicative of the

20  other claims, it should not stand.  I think plaintiff's

21  argument is that well we're pleading it in the

22  alternative, which they do have a right to do.  But

23  again, if you look at the unjust enrichment allegations

24  compared to the others, it actually does just mirror

25  those claims.  And so even if we dismiss those claims,

Proceedings

1    could plaintiffs get over these same humps that they had

2    before which is that did the full context of the products

3    that they were presented with materially mislead them as

4    would a reasonable consumer?  I think you'd have to apply

5    that test.  And I don't see how they get over that hurdle

6    for the reasons they've already bemoaned earlier.

7            So your Honor, we would like to reserve

8    bringing a standard argument but I'm not going to rest on

9    that today.  I'd like to just preserve that right.  But I

10   think we don't have to get that far because if we just

11   look strictly on the merits of the claims, there's no

12   issue of law or facts for this Court to resolve even if

13   we rely on the pleadings.

14           THE COURT:  Excellent.  Counsel, thank you so

15   much.  Let me go to your adversary.  What would you like

16   to argue in response, please?

17           MR. NASSIR:  Thank you, your Honor.  Just to go

18   in line with everything, as to standing, you know, I

19   think as your Honor acknowledged, the Second Circuit and

20   other circuits recognize whenever there's a similar type

21   of injury in advertising, the plaintiff has standing to

22   purchase un-purchased products.

23           But to move on to the substance, I think the

24   key here is almost what defendant said.  Look at the

25   context.  And what the defendant is trying to do is that

13

Proceedings

1    they're trying to characterize a very specific type of

2    case which they even admit has been monitored, the SDNY

3    vanilla cases, because they've been brought by one

4    attorney, and to apply that very narrow type of case to

5    any consumer case regarding ingredients, and I think

6    that's improper.  And if you look at the context of what

7    this case is about, it doesn't fit.

8            The vanilla cases, and I believe I put the

9    citation in our letter, the courts have recognized that

10   vanilla is very specific in the sense that it usually

11   does it as a flavor.  It's usually seen as a flavor.  For

12   example, if you're buying a vanilla creamer, you're not

13   going to expect them to scrape out some vanilla beans in

14   there.  If you're buying a vanilla cookie, you're not

15   going to expect some vanilla beans scraped in the cookie.

16   And these cases differentiate between what's typically an

17   ingredient and what's typically a flavor.

18           And the products at issue in this case,

19   pistachio ice cream, mango, coconut, orange, these are

20   typically ingredients.  And I think again, and you can

21   look at the context, Cold Stone's a premium brand, which

22   all this is alleged in the complaint, Cold Stone's a

23   premium brand.  It's expensive.  And even cheaper ice

24   cream brands such as Thrifty, I believe it's called Rite

25   Aid in New York, for example, their ice cream contains

14

Proceedings

1  pistachio.  And this is what consumers are accustomed to.

2  They're accustomed to ice cream containing the

3  ingredients that they say.  And I think that's what the

4  difference is.  We're not talking about a flavor like

5  vanilla, we're talking about something that is typically

6  an ingredient.  And this is what consumers are accustomed

7  to.  And it's not that, you know, Cold Stone never has an

8  ingredient in their ice creams.  For example, as we

9  allege in the complaint, their strawberry ice cream

10  contains strawberry.  The banana ice cream contains

11  banana.  And you know, by using defendant's logic, you

12  know, saying oh by the appearance you wouldn't be able to

13  tell, I mean look, their banana ice cream, as you see in

14  the complaint, it's banana colored, it looks like banana

15  and it has banana.

16        And I think what's important here is we look at

17  what is the type of product we're talking about.  We're

18  talking about a premium ice cream.  And as the complaint

19  alleges, ice cream typically has the ingredient that it's

20  named after.

21        And to address the pick your flavor, that was a

22  letter that we received last night where they claim that

23  on the wall it says pick your flavor.  Again, first, this

24  is outside the four corners of the complaint, but I don't

25  think it's an issue so I'd like to address it.

15

Proceedings

1      THE COURT:  Okay.

2      MR. NASSIR:  It's specific to ice cream.  Ice

3  cream is typically referred to as flavors despite ice

4  cream typically containing the ingredients that they're

5  named after just as how defendant's banana ice cream

6  contains banana.  For some reason, there is a select

7  number of products that don't have the ingredients

8  they're named after.  It's not what consumers expect when

9  they purchase ice cream, let alone premium ice cream.

10 And defendant is trying to seek a premature determination

11 that for some reason with these premium ice creams

12 consumers wouldn't expect the ingredients.

13      So I would say at this stage we've shown that

14 it's at least plausible that a consumer can look at this

15 premium ice cream and expect the ingredient they're

16 promised especially whenever cheaper brands can live up

17 to their name.

18      I think I'll leave it at that on the reasonable

19 consumer front.

20      THE COURT:  Okay.

21      MR. NASSIR:  As for the warranties, I think

22 your Honor knows they pretty much rise and fall with the

23 GBL claims but the one thing that I would like to address

24 is about it being fit for consumption and merchantable.

25 That is not what the courts follow.

16

Proceedings

1          We cite two cases in that regard, *Goldenberg v.*
2  *Johnson & Johnson* and *Hesse v. Godiva*.  I have personal
3  experience with the *Godiva* case and I could tell you with
4  that case that was not an issue.  It's simply whether it
5  conforms with the advertising.  Whether it's merchantable
6  is I believe a separate subsection of the warranty
7  statute.  The courts never looked at whether it's
8  merchantable.  And I think you can just take a look at
9  that case we cite, *Hesse v. Godiva*, that'll make that
10 clear.

11          As for unjust enrichment, I think defendant
12 characterized that we believe that under Rule 8 we just
13 have a right to plead claims in the alternative and it
14 would be premature to dismiss the unjust enrichment claim
15 at this stage.

16          THE COURT:  Okay.  Well --

17          MR. NASSIR:  And do you have any questions?

18          THE COURT:  Yes, I do actually.  I have a
19 couple of things.  You used the phrase a couple of times,
20 several times, of this being a premium ice cream.  I
21 happen to have a recollection, and I'm not going to
22 depend on this to decide the case, but it's something I
23 just want to raise with you.  You know, as your adversary
24 pointed out Cold Stone, as I recall, I haven't been there
25 in a long time, but part of the fact that it was a little

17

Proceedings

1   more costly than other ice cream retailers was that

2   there's an experience aspect.  In other words, you go in

3   and they take the ice cream and they mix things in, they

4   flip it around, and it's like a little bit of a show kind

5   of a -- which has been a marketing (indiscernible) for a

6   while.

7           My question is when you call it premium ice

8   cream, I mean if you were to re-plead this, do you have

9   evidence that says they only use actual ingredients or

10  that there are representations made about the nature of

11  the ingredients that makes it a premium ice cream?  Or is

12  it just the price point?

13          MR. NASSIR:  Good question, your Honor.  When

14  we say premium, we're referring to the price.  And that's

15  also what I was getting at when comparing the ice cream

16  to, for example, Thrifty, where the ice cream is much

17  cheaper.  And you know, there's still the ingredients in

18  the cheaper ice cream.  Yeah, by premium I'm talking

19  about the price point.

20          THE COURT:  Okay.  And then the other question

21  I was going to ask you, you plead in the complaint, in

22  the four corners of the complaint, when you go to the

23  website you can see there isn't any pistachio in there.

24  My question to you is from a 349, 350 perspective,

25  doesn't that actually aid the defendants in the sense

18

Proceedings

1   that they're not concealing this?  In other words, in a

2   world of smart phones, while you're on line if you wanted

3   to, you could check to see is there pistachio in there?

4   And you see no, actually not.  Doesn't that help them in

5   some ways?

6           MR. NASSIR:  That's a very good question, your

7   Honor.  I think the answer is no.  And I'll be happy to

8   brief this further if you'd like.  The Second Circuit

9   decision in *Mantikas* followed --

10          THE COURT:  Okay.

11          MR. NASSIR:  -- the Ninth Circuit decision in

12  *Williams* where consumers, in that case, they're not

13  expected to check, for example, the side or back label of

14  products if there's a plausibly deceptive representation

15  on the front.  And we're talking about online, that's an

16  even greater burden.

17          I can tell you a case I actually litigated,

18  *Rose v. HP* in the Northern District of California dealt

19  with online disclosures.  And there's a plethora of cases

20  that say that if there's a plausibly deceptive

21  representation, consumers aren't required to look online

22  to check.  I don't think any reasonable consumer is going

23  to be standing in the line at Cold Stone, there's someone

24  behind them waiting to order ice cream, and they say hm,

25  I wonder, let me pull out my smart phone and go on the

Proceedings

1   website and go on the ingredients list.

2          So I would say it's not reasonable concern to

3   be able to do that and there's a plethora of authority

4   out there that say that consumers aren't expected to go

5   online to cross check these types of representations.

6          THE COURT:  Okay.  And then the last question I

7   would ask you is how was your client harmed?

8          MR. NASSIR:  Sure.  So again, it goes to --

9   it's essentially a price premium.  It's that if this ice

10  cream was advertised correctly, it would be cheaper.  And

11  my client, as well as other putative class members, have

12  paid a premium for the product based on its advertising.

13  And the way it plays out is, you know, if this case were

14  to progress and it were go to class certification, we

15  would hire an economist to do what's called a hedonic

16  regression analysis.  And what they do is they'll parse

17  out like hey, this ice cream has a bundle of sticks of

18  values between the name and the taste and the price.  And

19  then one of those pieces of value would be the perception

20  that the pistachio ice cream has pistachio for example.

21  And that maybe instead of -- I apologize, your Honor, I

22  don't have the prices in front of me, but I'll give you

23  just a hypothetical example.  Instead of $5 a scoop it

24  should be $4.50 a scoop or $4 a scoop.  And it's that

25  difference in price based on this deception that my

20

Proceedings

1    client and other putative class members were injured.

2              THE COURT:  Okay.  All right.  Thank you.

3    Would defendants like to make any reply?

4              MR. WILLEMS:  Just briefly, your Honor.  I

5    think cause frankly on the depths of the law that are

6    underlying what we're talking about, it seems we're all

7    in agreement which is you have to look at the full

8    context.  And so, you know, the product and the context

9    and what the product is marketed.  So that includes the

10   website.

11             But most importantly, as I talked about

12   earlier, and this was the *Fink v. Time Warner* case that's

13   actually cited by plaintiffs, that means that if the

14   complaint, and I quote, misquotes or misleads an excerpt

15   of the advertising, we have to look at the full context

16   and we can bring that in.  And I think we don't have to

17   do it.  It's already on its face enough to show that

18   there is no reasonable confusion here.  But that's

19   something I want to note.

20             The other thing I think to end it was, this is

21   a direct quote from opposing counsel during his comments,

22   he says ice cream is commonly referred to as flavors.

23   And I think that's kind of the nail in the coffin as I

24   look at it because the test is -- a reasonable consumer

25   is defined more broadly as what would a substantial

21

Proceedings

1   amount of the consuming public view when they encounter

2   this product?  And based on that, I think I agree, we

3   think of ice cream as flavors until we're shown

4   otherwise.

5        So I'll stop digressing, but I think in the

6   long of it, your Honor, based on even what's pled in the

7   complaint, there's nothing indicating that this is the

8   type of case that should survive a Rule 12.  It doesn't

9   fall under that camp that I talked about earlier.

10       THE COURT:  Okay.  Very good.  Thank you.

11       All right, counsel.  So here's what I'm going

12  to do.  I'm going to go ahead and deem the motion made

13  and decide it, and I can do that mainly because counsel

14  on both sides have done a fine job of laying all out the

15  relevant law, the relevant facts, and making this very

16  clear, and that's something your clients should be

17  grateful to you for because you've saved them a great

18  deal of time and aggravation and frustration and expense

19  by being good lawyers.  And I thank you for that as well.

20       So with that in mind, I'm going to decide this.

21  So defendant has moved to dismiss the claims under Rule

22  12.  I'm not going to belabor the standard here.  I'm

23  familiar with what the standard is as set forth in so

24  many cases taking the allegations of the complaint as

25  true and drawing inferences in favor of the non-movant

Proceedings

1   which in this case is the plaintiff.  Are the claims

2   plausibly pled?

3            And this case is quite interesting.  And as I

4   indicated, there is an Article 3 standing argument as to

5   other flavors I don't really need to deal with other than

6   to say I don't believe that that's the case here in the

7   Second Circuit.  So I don't think that will carry the

8   day.

9            But that doesn't matter because to get to the

10  core of it, which is did the plaintiff, in buying an ice

11  cream at a shop, a retail shop where it's sold by the

12  scoop and so forth from a vat that is labeled simply with

13  the word pistachio and nothing more, and that can be seen

14  very clearly in the complaint on pages 4 and 5, your

15  photographs, which are actually quite, quite helpful,

16  could the plaintiff expect that by definition there would

17  be pistachios in, or real pistachio ingredients in the

18  ice cream?  And I think the answer is no.

19           I'm going to say a few things here that relate

20  to other cases.  I do follow the line of case law that

21  defendants have cited relating to vanilla in the southern

22  district.  And while there may be some differences

23  (indiscernible) in *Cruz v. D.F. Stauffer Biscuit Company*,

24  which is at 2021 WL 5119395, in this regard is quite

25  instructive.  All right?  Those are the cases that hold

23

Proceedings

1    the word vanilla made representation about flavor rather

2    than the ingredient.

3            Now, the important thing here is there is no

4    representation made, and I even asked counsel if they

5    were to re-plead this case would they have anything

6    additional to add in terms of the quality of the

7    ingredient, the premium price at Cold Stone, is that

8    derived from representations about all-natural

9    ingredients or the highest?  That's not the issue.  That

10   hasn't been raised here (audio interference) --

11           MR. NASSIR:  Your Honor?

12           THE COURT:  Yes?

13           MR. NASSIR:  Sorry, I wasn't sure if that was a

14   question.

15           THE COURT:  It wasn't.  Go ahead.

16           MR. NASSIR:  My apologies.

17           THE COURT:  (Audio interference) --

18           MR. NASSIR:  Sorry, your Honor, you're cutting

19   out on my end.  I deeply apologize.

20           THE COURT:  (Audio interference).

21           MR. NASSIR:  I'm sorry, I can't -- I'm not sure

22   if it's my line.  The voice keeps going in and out on my

23   end.

24           MR. WILLEMS:  You're cutting out on my end as

25   well, your Honor.

24

Proceedings

1    THE COURT: (Audio interference).

2              (Pause in proceedings)

3    MR. NASSIR: This is Joshua. Is anyone still

4  on the line?

5    MR. WILLEMS: This is Kyle S. Willems.

6    THE CLERK: Okay, the judge is calling back in.

7  Just give him a second.

8    MR. WILLEMS: Okay.

9    MR. NASSIR: Thank you.

10             (Pause in proceedings)

11   THE COURT: Okay. So this is Judge Brown and

12  I'm back. I called in on a landline because obviously

13  the cell service isn't working for me today.

14   So how much of what I said didn't you hear I

15  guess is my question?

16   MR. NASSIR: Thank you, your Honor. This is

17  Mr. Nassir. I caught your ruling but after you provided

18  your ruling is where it started to go in and out for me.

19   THE COURT: Oh yes, I was sort of still in the

20  middle of the ruling but I'll sort of pick up where I

21  was. And I think I know where you asked me a question so

22  maybe I can take it from there. My staff also told me

23  they couldn't hear me either, so there we are.

24   So anyway, I had asked defense counsel, or I'm

25  sorry, plaintiff's counsel rather, whether or not there

Proceedings

1    were additional facts, representations made about the

2    quality of the ingredients.  Right?  Whether it was from

3    actual, healthful, or anything like that and the answer

4    is those sorts of representations are not available to us

5    now.  So that's not something that's at issue here.

6          And the question is the determination that this

7    is a premium ice cream is based solely on price point.

8    And as we've discussed, price point could be based on a

9    lot of things.  So again, I think this goes back into the

10   notion that consumers would not be deceived by the sole

11   representation of pistachio.

12         Now, I was drawing everyone's attention to

13   pages 4 and 5 of the complaint where there's a single

14   word describing the ice cream flavor, pistachio.  And

15   again, those photos are very helpful.  But you know, also

16   in there is things like, and these aren't the best

17   examples, but salted caramel and cotton candy, butter

18   pecan.  I don't think that someone buying those ice

19   creams are necessarily saying oh there's definitely

20   butter in there or there's definitely cotton candy.

21   Probably not.  Cotton candy is absolutely artificially

22   flavored.  So I don't think that these single word

23   descriptions of the ice cream can reasonably be relied on

24   by consumers or would be deemed as misleading to

25   consumers.

26

Proceedings

1          So I'm finding the claim implausible for that

2   reason.  And again, I'm relying largely in terms of the

3   law on the *D.F. Stauffer Biscuit Company* case, *ShopRite*

4   *Supermarket* cases, the cases dealing with vanilla as a

5   flavor as compared to vanilla as a plant which is a

6   vanilla bean.  I think the same logic applies here to the

7   pistachio cases.

8          So I'm going to find that the claims are not

9   plausible.  I am deeming the motion granted and made.

10          Now, I don't know where we kind of lost the

11  audio record.  I don't plan on writing this.  If anybody

12  wants a copy of my decision, you can obviously order the

13  transcript of this conference.

14          Is there anything else I should deal with

15  today?

16          MR. NASSIR:  Your Honor, this is Mr. Nassir.  I

17  would ask just that in order to further prove our

18  allegation as to what reasonable consumers expect, you

19  know, we would respectfully request some time to conduct

20  a consumer survey, you know, which would show consumers

21  exactly the picture in the complaint and say that based

22  on the representation and the appearance would you

23  expect -- for example, we can isolate just one flavor if

24  if your Honor would like it to be done differently,

25  expect pistachio in the product.  And I think that could

27

Proceedings

1   maybe shed some light to support plaintiff's allegations

2   that when it comes to ice cream, people expect the

3   ingredients.  That's --

4         THE COURT:  Well, that's interesting.  Counsel,

5   what I would say is this.  If you told me you had such a

6   survey, right, and you wanted to amend to include that, I

7   would say go ahead.  But there's no way I'm going to give

8   you enough time to conduct a survey and redraft the

9   complaint.  I mean we don't have that sort of luxury.  In

10  other words, I don't think you can get that done in 30

11  days, right?

12        MR. NASSIR:  I believe I could get that done in

13  30 days, your Honor.

14        THE COURT:  Wow.  Okay.  Well, let me hear

15  defendant on that before I say anything else.

16        MR. WILLEMS:  Thank you, your Honor.  Well,

17  first of all I would say that the Court has ruled on the

18  claims already so the time to seek to amend the complaint

19  properly would have been done before this, not after the

20  ruling.  So I believe it's barred for that reason alone.

21        The second reason, if I go to the merits, you

22  know, there's cases that have these consumer surveys and

23  still get dismissed on Rule 12 because they're still

24  going to have the same problem which is again, I talked

25  about what camp does it fall into and does a survey

Proceedings

1   change the fact that it says it's a flavor on the

2   signage, that it doesn't say made with or anything like

3   that and it doesn't have any visual indication that it

4   contains actual chunks of pistachio.

5           So I get the idea of a survey but it still

6   doesn't get over the threshold issues that I raised that

7   are common in cases where a Rule 12 motion was granted

8   even in light of a survey.

9           THE COURT:  Right.  I hear you.  So the real

10  question that's being raised for me now, and I know

11  you're all in the ice cream weeds as such, right, and I

12  look at it from a broader perspective which is does

13  plaintiff have the right to re-plead?  And of course we

14  all know the standards under Rule 15, it's very liberal,

15  and federal courts like to give everyone an opportunity

16  to be heard on the merits and so forth.

17          So here's what I'm going to do.  I'm not going

18  to rule one way or the other.  I don't know that a survey

19  gets you over the top.  It may, it may not.  But I will

20  give you 30 days to file a proposed amended complaint and

21  I would encourage you to recognize that such a filing is

22  not aspirational.  So if all you have at the end of that

23  is a survey that says 10 percent of consumers thought

24  there should have been pistachio in there, you know, I'd

25  urge you to think with great care before you filed that.

29

                    Proceedings

1              On the other hand, there's suggestions of other
2    signage, the larger context, whatever.  You know, I'm not
3    limiting what you can do.  I'm not telling you what to
4    do.  But I will deem it dismissed without prejudice to
5    re-filing.  But that's going to last a period of 30 days.
6    At the end of 30 days, if you don't re-file, which is
7    fine because that might be the right outcome if that's
8    the right outcome, if you don't re-file, it will be
9    deemed to be with prejudice at that point.  Does that
10   sound reasonable?
11             MR. NASSIR:  Yes, your Honor.  Thank you very
12   much.
13             THE COURT:  Okay.  Good.  Anything else I can
14   do for you all today?
15             MR. WILLEMS:  Not on behalf of the defense,
16   your Honor.  Thank you for your time and attention.  We
17   appreciate it.
18             THE COURT:  Okay.
19             MR. NASSIR:  Not on behalf of plaintiff.  Thank
20   you, your Honor.
21             THE COURT:  Okay.  So let me just say,
22   reiterate what I said before just in case it got lost.
23   Counsel did a fine job on this.  You really did a great
24   job.  You made this easy to decide in the sense of by
25   being well prepared.  And you should tell your clients

30

Proceedings

1  that you saved everyone a lot of time and expense, so

2  that's a good thing.  So that's good.  And I'll ask you

3  to enjoy the rest of your summer.  All right?

4            MR. NASSIR:  Thank you, your Honor.

5            THE COURT:  All right.  Be well.

6            MR. WILLEMS:  Thank you, your Honor.

7            THE COURT:  Bye.

8                   (Matter concluded)

9                        -oOo-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

31

# C E R T I F I C A T E

       I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

       I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

       IN WITNESS WHEREOF, I hereunto set my hand this **1st** day of **September**, 2023.

*Mary Greco*

Transcriptions Plus II, Inc.