

October 5, 2023

The Honorable Judge Gary R. Brown
Judge of the District Court
Eastern District of New York

      Re:    *Duncan v. Kahala Franchising, L.L.C.*, No.: 2:22-cv-07841

Your Honor:

      We represent Plaintiff and the putative Classes in the above-referenced matter, and write in response to Defendant's pre-motion letter ("Ltr.") seeking leave to file a motion to dismiss Plaintiff's First Amended Complaint ("FAC"). As outlined herein, any forthcoming motion to dismiss should be denied.[1] On July 25, 2023, the Court granted Defendant's first motion to dismiss, but granted Plaintiff leave to amend her complaint and conduct a consumer perception survey regarding the challenged advertising. The overwhelming results of this survey unequivocally demonstrate that reasonable consumers are misled by the names of the challenged Cold Stone ice creams (the "Products"). Specifically, a demographically representative survey ("Survey") of over 400 U.S. residents confirmed that a substantial majority of respondents believed that, based on Defendant's in-store advertising, Defendant's Pistachio ice cream contained actual pistachios (approximately 85.4% of respondents) and Defendant's Mint ice cream contained actual mint (approximately 88.6% of respondents). FAC ¶ 22 (citing Exhibit A).

      Based on the survey results alone, it is more than plausible that reasonable consumers are likely to be deceived. *See, e.g.*, *Shalikar v. Asahi Beer U.S.A., Inc.*, 2017 WL 9362139 at *7 (C.D. Cal. Oct. 16, 2017) (denying motion to dismiss, relying on consumer survey showing that 86% of consumers were misled by defendant's labeling); *Joseph v. J.M. Smucker Co.*, 2019 WL 1219708, at *3 (C.D. Cal. Mar. 13, 2019) (denying motion to dismiss based in part on the results of a consumer survey). Indeed, a consumer survey is the gold standard for determining whether consumers are being deceived. *Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 318 (7th Cir. 1992) ("The most convincing extrinsic evidence is a survey of what consumers thought upon reading the advertisement in question . . . ."). At the pleading stage, to survive a motion to dismiss under the GBL, Plaintiff need only demonstrate that it is plausible that reasonable consumers are likely deceived by the Products' advertising. *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014). "[T]he reasonable consumer standard . . . raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'" *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955 at *8 (E.D.N.Y. July 21, 2010) (internal citations omitted). This is not one of the rare situations where deception is implausible, especially when an empirical consumer survey strongly suggests otherwise. Indeed, the reasonable consumer standard hinges on ***consumer*** perception. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 480-81 (7th Cir. 2020) ("We see no basis for disregarding plaintiffs' allegations [that they conducted consumer surveys supporting their allegations of deception] in deciding the motions to dismiss. What matters here is how consumers actually behave—how they perceive

---

[1] Like Defendant, Plaintiff incorporates by reference and expressly preserves all arguments previously raised in Plaintiff's initial response letter. ECF No. 16.

advertising and how they make decisions. These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them.").

New case law in this jurisdiction also supports Plaintiff's allegations. Specifically, in *Kominis et al., v. Starbucks Corp.*, 2023 WL 6066199 at *2 (S.D.N.Y. Sept. 18, 2023), the court held that consumers could be misled into believing that Starbucks' "Mango Dragonfruit," "Pineapple Passionfruit" and "Strawberry Açaí" Refreshers beverages contain actual mango, passionfruit, and acai, respectively, even though the beverages contained only mango, passionfruit, and acai ***flavoring***.[2] *Id.* at *6. The court also distinguished the "vanilla" cases, reasoning that "nothing before the Court indicates that 'mango,' 'passionfruit,' and 'açaí' are terms that typically are understood to represent a flavor without also representing that ingredient." *Id.* at *7.

Defendant's argument that the Survey's methodology and demographics are not reliable is both premature and unfounded. Ltr. at 2; *Shalikar,* 2017 WL 9362139 at *7 ("[T]he Court must presume [survey data as] truth on a motion to dismiss, even if a defendant has raised colorable arguments as to the reliability of the survey methodology."); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997) (objection that a survey tested only a subset of the class went "only to the weight, and not the admissibility, of the survey"). Ultimately, "no survey is perfect: by necessity they are imperfect reflections of how customers act in reality." *Marketquest Grp., Inc. v. BIC Corp.*, 2018 WL 1782724, at *5 (S.D. Cal. Apr. 12, 2018).

Lastly, Defendant contends that Plaintiff has "failed to ***establish*** any damages." Ltr. at 2 (emphasis added). But at the pleading stage, plaintiffs are not required to establish damages, as they have not had the benefit of discovery. Instead, plaintiffs must only allege that they would not have purchased the challenged product or would not have paid the same price for it had they known the truth about the product. *See Schleyer v. Starbucks Corp.*, 2023 WL 5935695, at *4 (S.D.N.Y. Sept. 12, 2023) ("[Plaintiff] alleges that he would have paid significantly less for the bagel or would not have purchased it at all absent the alleged misrepresentation 'because sprouted grains are more premium and desirable than traditional non-sprouted grains.' [Plaintiff's] allegation is a plausible and cognizable price premium theory of injury.") (citing *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020) (same)). This is precisely what Plaintiff has alleged here. FAC ¶¶ 4-5, 27. Establishing damages requires expert analysis based on econometric techniques such as a conjoint or hedonic regression analysis. *See, e.g., Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1104-11 (N.D. Cal. 2018) (discussing such techniques). Such analyses can take place only after sufficient discovery has been completed.[3]

---

[2] Notably, just like Defendant's menu, Starbucks' menu also featured drink options with fanciful names, such as "Pink Drink."

[3] While the Court held that the products price point "could be based on a lot of things" other than the ingredients contained in the products, the price of a product is the result of multiple attributes, and here, the idea that the Products contain the advertised ingredient is one of those factors. *See In re Dial Complete Mktg. & Sales Pracs. Litig.*, 312 F.R.D. 36, 77 n. 25 (D.N.H. 2015) ("The term 'premium' is better described as the amount of money consumers pay to acquire a certain attribute of a product. Assuming the allegations in this case to be true, [class members] have paid to purchase antibacterial attributes of Dial Complete they did not receive, and they have thus been damaged as a result thereof. . . .The costs of including the anti-bacterial agent becomes embodied in the price of the product in the same way all other costs such as packaging, advertising[,] etc. and are paid for by all class members regardless of the reasons they may have purchased the product.").

Sincerely,

Joshua Nassir, Esq.