**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                         :

Jenna Marie Duncan, individually, and on      :
behalf of all others similarly situated,       :     CASE NO. 2:22-cv-07841-GRB-AYS
                                           :

                     Plaintiff,       :
                                           :

        v.       :

Kahala Franchising, L.L.C.,       :

                    Defendant.       :

------------------------------------------------------- x

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................................1

II.    STATEMENT OF FACTS....................................................................................1

III.   LEGAL STANDARD............................................................................................3

IV.    ARGUMENT………………………………………………..…………………3

       A.     The Products' Advertising Misleads Reasonable Consumers ................................3

              1.   The Reasonable Consumer Standard Applies……..…………………………..3

              2.   The Survey Demonstrates That Reasonable Consumers Are Deceived……...4

              3.   The SDNY Vanilla Cases Do Not Apply Here……………………………….8

                   a.   The Placards Are Misleading Because They Name Specific Ingredients
                        That are Missing From the Products…………………………………10

                   b.   The Placards List the Missing Ingredients as Nouns………..………12

                   c.   The Appearance of The Products Supports Consumer's Reasonable
                        Belief That The Products Contain the Represented Ingredients…..…13

              4.   Consumers Have No Reason to Believe They Are Being Misled And Are Not
                   Expected to Consult Defendant's Online Ingredient's List…………..………14

              5.   Plaintiff's Claims Under the GBL Survive Because Plaintiff Sufficiently
                   Alleged Actual Injury………………………………………………………..16

       B.     Plaintiff Adequately Pled Her Warranty Claims Thus They Should Survive.......18

              1.   Plaintiff's Express Warranty Claims Are Adequately Pled……..…………..18

              2.   Plaintiff's Implied Warranty Claims Are Adequately Pled…………..…..…19

       C.     Plaintiff Has Adequately Pled A Claim For Unjust Enrichment..........................20

V.     CONCLUSION....................................................................................................20

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
  No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) .................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................3

*Axon v. Florida's Nat. Growers, Inc.*,
  813 F. App'x 701 (2d Cir. 2020) .........................................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................................3

*Bell v. Publix Super Markets, Inc.*,
  982 F.3d 468 (7th Cir. 2020) ................................................................................................6

*Brumfield v. Trader Joe's Co.*,
  No. 17-cv-3239 (LGS), 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ................................20

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
  516 F. Supp. 3d 370 (S.D.N.Y. 2021) ..................................................................................11

*Caronia v. Philip Morris USA, Inc.*,
  715 F.3d 417 (2d Cir. 2013) ................................................................................................20

*Colangelo v. Champion Petfoods USA, Inc.*,
  No. 6:18-CV-1228 (LEK/ML), 2022 WL 991518 (N.D.N.Y. Mar. 31, 2022) ........................7

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) ............................................................................17, 18

*Colpitts v. Blue Diamond Growers*,
  527 F. Supp. 3d 562 (S.D.N.Y. 2021) ..................................................................................12

*Cooper v. Anheuser-Busch, LLC*,
  553 F. Supp. 3d 83 (S.D.N.Y. 2021) ..............................................................................14, 16

*Cosgrove v. Blue Diamond Growers*,
  No. 19 CIV. 8993 (VM), 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ................................10

*Cosgrove v. Oregon Chai, Inc.*,
  520 F. Supp. 3d 562 (S.D.N.Y. 2021) ..................................................................................10

*Cruz v. D.F. Stauffer Biscuit Co.*,
    No. 20-cv-2402 (PGG) (JLC), 2021 WL 5119395 (S.D.N.Y. Nov. 4, 2021)...................10, 12

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ....................................................................................18

*Danone, US, LLC v. Chobani, LLC*,
    362 F. Supp. 3d 109 (S.D.N.Y. 2019)..................................................................................5, 6

*Dashnau v. Unilever Mfg. (US), Inc.*,
    529 F. Supp. 3d 235 (S.D.N.Y. 2021)....................................................................................12

*Davis v. Hain Celestial Grp., Inc*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) ...................................................................................15

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)......................................................................................................4

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    No. 12-MD-2413-RRM-RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ...................4, 9

*Greene v. Gerber Prod. Co.*,
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) .....................................................................................18

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)..................................................................................4, 20

*Howze v. Mondelez Glob. LLC*,
    No. 22-CV-351 (JLS), 2023 WL 122307 (W.D.N.Y. Jan. 5, 2023) .......................................19

*Izquierdo v. Mondelez Int'l, Inc.*,
    No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ................................17

*Izquierdo v. Panera Bread Co.*,
    450 F. Supp. 3d 453 (S.D.N.Y. 2020)..................................................................11, 13, 14, 17

*Kacocha v. Nestle Purina Petcare Co.*,
    No. 15-CV-5489-KMK, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ...................................4

*In re KIND LLC "Healthy & All Natural" Litig.*,
    627 F. Supp. 3d 269 (S.D.N.Y. 2022).......................................................................................7

*Kominis v. Starbucks Corp.*,
    No. 22 CIV. 6673 (JPC), 2023 WL 6066199 (S.D.N.Y. Sept. 18, 2023)....................... *passim*

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018)..........................................................................................11, 15

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998)..................................................................................4

*Mitchell v. Whole Foods Mkt. Grp., Inc.*,
    No. 20 CIV. 8496 (ER), 2022 WL 657044 (S.D.N.Y. Mar. 4, 2022).......................8

*Newman v. Bayer Corp.*,
    No. 22-CV-7087 (KMK), 2023 WL 6318523 (S.D.N.Y. Sept. 28, 2023) .............17

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015)................................................................................16

*Parham v. Aldi, Inc.*,
    No. 19 CIV. 8975 (PGG), 2021 WL 4296432 (S.D.N.Y. Sept. 21, 2021) ...........7, 8

*Pichardo v. Only What You Need, Inc.*,
    No. 20-CV-493 (VEC), 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) .................10

*Rodriguez v. Target Corp.*,
    No. 22 CIV. 2982 (LGS), 2022 WL 18027615 (S.D.N.Y. Dec. 30, 2022) .............6

*Rose v. HP Inc.*,
    No. 20-CV-02450-VC, 2020 WL 7714532 (N.D. Cal. Dec. 29, 2020)..................16

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)..................................................................................3

*Schneider v. Chipotle Mexican Grill, Inc.*,
    328 F.R.D. 520 (N.D. Cal. 2018) ........................................................................16

*Scholder v. Sioux Honey Ass'n Coop.*,
    No. CV 16-5369 (GRB), 2022 WL 125742 (E.D.N.Y. Jan. 13, 2022)...................4

*Shalikar v. Asahi Beer U.S.A., Inc.*,
    No. LA CV-1702713-JAK (JPRx), 2017 WL 9362139 (C.D. Cal. Oct. 16,
    2017) ....................................................................................................................6

*Sharpe v. A&W Concentrate Co.*,
    481 F. Supp. 3d 94 (E.D.N.Y. 2020) ....................................................................5

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ...........................................................................................17

*Steele v. Wegmans Food Markets, Inc.*,
    472 F. Supp. 3d 47 (S.D.N.Y. 2020)....................................................................10

*Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*,
    No. 14-cv-9992-SAS, 2015 WL 4190746 (S.D.N.Y. July 10, 2015).....................20

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021)...................................................................7, 8

*Wallace v. Wise Foods, Inc.*,
    No. 20-CV-6831 (JPO), 2021 WL 3163599 (S.D.N.Y. July 26, 2021)...................................19

*Warner v. StarKist Co.*,
    No. 1:18-cv-406-GLS-ATB, 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019).........................20

*Zaback v. Kellogg Sales Co.*,
    No. 3:20-CV-00268-BEN-MSB, 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020)....................12

**Statutes**

N.Y. GBL §§ 349–50....................................................................................................4, 16

N.Y. U.C.C. § 2314(2)(c).....................................................................................................20

N.Y. U.C.C. § 2314(2)(f).............................................................................................19, 20

**Other Authorities**

Fed. R. Civ. P. 8(a)(3).........................................................................................................20

Fed. R. Civ. P. 12(b)(6).........................................................................................................3

## I.    **INTRODUCTION**

This Court granted Plaintiff leave to amend her Complaint, and Plaintiff has done so with detailed survey results that demonstrate that an *overwhelming majority* of ice cream purchasers, after seeing the entire in-store menu board and images of the ice creams and their placards at a Cold Stone Creamery, believe that the ice cream Products are made with the ingredients plainly stated in their names. Despite this survey evidence, which replicates the real-world ordering process, Defendant argues this belief is nonetheless incredulous, even though other Cold Stone ice cream products ***do*** contain the promised ingredients. Defendant spends a significant amount of time further challenging the methodology of the Survey. However, courts universally find such challenges to be premature at this stage of litigation. Even if this weren't the case, Defendant's critiques are baseless because Defendant mischaracterizes the Survey and its methodology, which accurately reflects the consumer experience at its stores.

Moreover, recent authority supports Plaintiff's claims. A recent decision from New York found it plausible that reasonable consumers are misled by the naming of Starbucks' Refresher beverages on its in-store menu boards (e.g., Strawberry Acai Refresher), leading consumers to believe that the beverages contained all the ingredients in their names. *Kominis v. Starbucks Corp.*, No. 22 CIV. 6673 (JPC), 2023 WL 6066199, at *2 (S.D.N.Y. Sept. 18, 2023). The court in *Kominis* further held that the Vanilla Cases, on which Defendant heavily relies, apply narrowly to ***just vanilla***, and thus did not warrant dismissal of the plaintiff's claims. The same is true here. As discussed in more detail herein, the Motion should be denied in its entirety.

## II.    **STATEMENT OF FACTS**

This putative class action seeks to challenge Defendant's false and deceptive practices in the marketing, advertising, and sale of its ice cream products sold at Cold Stone's brick and mortar

locations.  Pl.'s First Am. Compl. ("FAC") (ECF No. 21) ¶ 1. The Products at issue in this case include Cold Stone's (1) Pistachio Ice Cream; (2) Mango Ice Cream; (3) Coconut Ice Cream; (4) Orange Sorbet; (5) Orange Ice Cream; and (6) Mint Ice Cream; and (7) Butter Pecan Ice Cream. (collectively, the "Product(s)"). *Id*. ¶ 11. During the relevant class period, Defendant has marketed the Products using the names of specific ingredients, representing to consumers that the Products contain those advertised ingredients. *Id*. ¶ 13. Despite the name of each Product, and unbeknownst to consumers, the Products are missing the ingredient plainly stated in their name (e.g., the Pistachio Ice Cream contains ***no pistachio***, the Mango Ice Cream contains ***no mango***). *Id*. ¶ 16.

Notably, a recent third-party online survey ("Survey") conducted by a market research company confirms that consumers are deceived. FAC ¶ 22; *Id.*, Ex. A. The Survey was administered to a demographically representative sample of over 400 U.S. residents who had purchased ice cream products within three months of taking the Survey. *Id.* ¶ 22. As part of the Survey, among other tasks, respondents were shown the *entire* menu board at a Cold Stone Creamery prior to being shown pictures of the ice cream and identifying placards. *Id; see also id.* ¶ 13. Respondents then were asked "for various ice cream varieties, including the Pistachio and Mint Products, whether they believed the Product contained the ingredient stated in their name (e.g., 'When viewing the image above, what ingredients do you believe would be included in the Pistachio ice cream? Select all that apply.')". *Id.* ¶ 22. To respond, respondents were provided a drop-down list of ten ingredients, including the ingredient found in the Product's name (e.g., Pistachio or Mint), to choose from. *Id.* Respondents were also given the option to select "None of the above." *Id.* The results overwhelmingly confirmed that consumers are deceived by Defendant's advertising. *Id.* A staggering majority of the respondents – approximately 85.4% of them – believed that the Pistachio Product contained pistachio. And approximately 88.6% of respondents

believed that the Mint Product contained mint. *Id*.

Plaintiff and other consumers purchased the Products for a premium price based upon their reliance on Defendant's representations, reasonably believing that the ingredients advertised in the name of each Product were actually in each Product. *See id*. ¶¶ 27-28. Had Plaintiff and other consumers been aware that the Products are missing the specified ingredient, they would not have purchased them or would have paid significantly less for them. *Id*. ¶ 27. Accordingly, Plaintiff and other consumers have been injured by Defendant's deceptive business practices. *Id*. ¶ 28.

## III.    <u>LEGAL STANDARD</u>

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept the complaint's factual allegations, and all reasonable inferences that can be drawn from those allegations in the plaintiff's favor, as true." *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007). The notice pleading standard of the Federal Rules "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## IV.    <u>ARGUMENT</u>

### A.    <u>The Products' Advertising Misleads Reasonable Consumers</u>

1. <u>The Reasonable Consumer Standard Applies</u>

Plaintiff's General Business Law ("GBL") claims are governed by the reasonable consumer standard.  *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998).  Under that standard, *at trial*, plaintiffs must only show that consumers are likely to be deceived.  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Therefore, at this juncture, dismissal is only appropriate in "rare situation[s]," and only if viewing the facts in the light most favorable to plaintiff, it is "'***impossible*** for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (emphasis added) (citing *Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008)).

For these reasons, this Court has recognized that "[u]sually, the reasonable consumer inquiry is a question of fact not suited for resolution at the motion to dismiss stage." *Scholder v. Sioux Honey Ass'n Coop.*, No. CV 16-5369 (GRB), 2022 WL 125742, at *3 (E.D.N.Y. Jan. 13, 2022) (J. Brown) (citation omitted); *see also Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489-KMK, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (holding that "ample case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact") (collecting cases).

Thus, for this Court to grant Defendant's motion to dismiss, Defendant must meet the "heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled." *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413-RRM-RLM, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (citation omitted).

2.  <u>The Survey Demonstrates That Reasonable Consumers Are Deceived</u>

The Survey unequivocally demonstrates that reasonable consumers who regularly purchase ice cream expect the Products to contain the ingredients they are named after. The Survey, which is attached in full to Plaintiff's FAC, asked consumers a simple, non-leading question ***after***

*respondents were required to view an image of the entire in-store menu board as well as image(s) of the ice cream selections* at a Cold Stone location, consumers were asked a non-leading question: e.g., "When viewing the image above, what ingredients do you believe would be included in the Pistachio ice cream? Select all that apply." FAC at ¶ 22; *Id.* Ex. A, at 11, 22.

The results demonstrated that the vast majority of ice cream purchasers agree with Plaintiff, as, for example, "a staggering majority of the respondents – approximately 85.4% of them – believed that the Pistachio Product contained pistachio. And approximately 88.6% of respondents believed that the Mint Product contained mint." FAC at ¶ 22.

As numerous courts, including New York District Courts, have recognized, in cases involving substantially similar consumer surveys, such evidence is sufficient to demonstrate that consumers are *plausibly* deceived. For example, in *Sharpe*, the plaintiff alleged that a "Made With Aged Vanilla" representation on A&W Root Beer misled reasonable consumers into believing the vanilla in the product was exclusively or predominantly derived from vanilla. *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 97-98 (E.D.N.Y. 2020). The plaintiff introduced a survey of approximately 400 consumers to support this allegation. *Id.* The survey found that "around 68% of surveyed consumers believed that the statement meant that the vanilla flavor 'comes from a vanilla plant, such as a vanilla extract, which is made from vanilla beans from the vanilla plant.'" *Id.* The *Sharpe* court found that consumers were plausibly deceived by the product's labeling, and that the allegations were "bolstered by the persuasive extrinsic evidence that the overwhelming percentage of consumers share this misconception." *Id*. at 103; *see also Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 120 (S.D.N.Y. 2019) (finding consumer survey results to plausibly demonstrate consumer deception).

While Defendant acknowledges that the survey results overwhelmingly support Plaintiff's position, Defendant focuses its attacks on the survey's methodologies. Mot. at 11-14. Courts have routinely rejected such attacks as premature at the pleading stage. *See, e.g., Bell v. Publix Super Markets, Inc.,* 982 F.3d 468, 481 (7th Cir. 2020) ("We see no basis for disregarding plaintiffs' allegations [that they conducted consumer surveys supporting their allegations of deception] in deciding the motions to dismiss. What matters here is how consumers actually behave—how they perceive advertising and how they make decisions."); *Rodriguez v. Target Corp.*, No. 22 CIV. 2982 (LGS), 2022 WL 18027615, at *5 (S.D.N.Y. Dec. 30, 2022) ("[T]he Court cannot weigh the evidence or choose between competing inferences at the motion to dismiss stage."); *Shalikar v. Asahi Beer U.S.A., Inc.*, No. LA CV-1702713 JAK (JPRx), 2017 WL 9362139, at *7 (C.D. Cal. Oct. 16, 2017) (holding that consumer survey must be accepted as true even if there are "colorable arguments as to the reliability of the survey methodology.") (citation omitted).

While attacks on methodology cannot even be considered on a motion to dismiss, Plaintiff will address a few of them, as the attacks fall woefully short. For example, Defendant argues that the Survey's questions are leading, however, the questions asked, *e.g.*, "When viewing the image above, what ingredients do you believe would be included in the Pistachio ice cream? Select all that apply." FAC Ex. A, at 22. The responses allowed for respondents to select from numerous ingredients, including a choice for "None of these ingredients." *Id*. Ex. A, at 15-17. This question is not leading. *See Danone*, 362 F. Supp. 3d at 120 (noting that criticisms of expert report survey are "underwhelming," rejecting the notion that "because the survey was close-ended, the questions that were asked were 'leading.' A leading question 'suggests the answer,' i.e., the one and only answer, 'to the person being interrogated.'") (citing Black's Law Dictionary 1023 (10th ed. 2014)).

And while Defendant *admits* that respondents were shown the *entire* menu board and images of the ice cream selections, Mot. at 11,[1] Defendant complains that the Survey did not "draw attention to" the "Select your flavor" selection. *Id.* Not only is this another premature attack, but it would be a manipulation of the real-world ordering process if the Survey had emphasized a portion of the menu board. The ordering process was replicated, with respondents being shown the entire menu board and the selection of ice cream varieties.

Plaintiff will not address the remaining attacks Defendant makes on the Survey's methodologies for purposes of brevity, and because, as described above, such attacks (such as Defendant's criticisms about the survey respondents being ice cream purchasers generally as opposed to exclusively Cold Stone purchasers), are premature, or are seeking to weigh evidence, which would not be acceptable even at class certification. Defendant's own authorities demonstrate as such. *See e.g., In re KIND LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d 269 (S.D.N.Y. 2022) (finding survey inadmissible at class certification); *Colangelo v. Champion Petfoods USA, Inc.*, No. 6:18-CV-1228 (LEK/ML), 2022 WL 991518, at *12 (N.D.N.Y. Mar. 31, 2022) (refusing to exclude a consumer survey *at class certification* for attacks on the survey's methodology).

While Defendant points to a couple authorities which have declined to accept consumer surveys at the pleading stage to support finding of consumer deception, these authorities did not base this declination on methodology, but because the surveys ***did not address the allegations at issue in the lawsuit***. For example, in *Parham*, and the case it relies on, *Twohig*, the courts found that the surveys were insufficient to demonstrate that consumers were plausibly misled because they only tested whether respondents "believed the origin of the vanilla taste" in the vanilla-flavored products at issue "comes from the vanilla plant"; however, the "survey does not

---

[1] For this reason, Defendant's assertion that Plaintiff did not show the "full context" of the ordering process and that "Plaintiff used incomplete [] information" is patently false. Mot. at 11.

demonstrate that [] respondents believed the flavor in Defendant's product came predominantly or exclusively from vanilla beans – **which is what Plaintiffs allege**." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 163 (S.D.N.Y. 2021); *Parham v. Aldi, Inc.*, No. 19 CIV. 8975 (PGG), 2021 WL 4296432, at *7 (S.D.N.Y. Sept. 21, 2021); *see also Mitchell v. Whole Foods Mkt. Grp., Inc.*, No. 20 CIV. 8496 (ER), 2022 WL 657044 (S.D.N.Y. Mar. 4, 2022) (dismissing claims because the complaint failed to allege "what questions were asked and what methodology was used" and "the allegations regarding the survey [were] in connection with another product").

Here, the Survey asked, for example, "When viewing the image above, what ingredients do you believe would be included in the Pistachio ice cream? Select all that apply." FAC Ex. A, at 15. This precisely mirrors Plaintiff's allegations, that "the in-store advertising of the Products calls out specific ingredient(s) by name (e.g., "Pistachio"), leading consumers to reasonably believe that the Products contain the specified ingredient." FAC ¶ 13. The question does not ask about, for example, the source of pistachio or whether real pistachio would be the exclusive source of the flavor, but rather, whether the Product simply contained the ingredient.

Defendant has no defense to this, simply stating that the Survey did not touch on the "flavor placard" or "what information could be gleaned therefrom." Mot. at 13. This is patently false. The Survey not only shows consumers the in-store menu board, which states "Select Your Flavor", FAC Ex. A, at 11, but each question also shows respondents the placard with the purported 'flavors', and are then immediately asked *based on the image with the placard*, what ingredients they expected to be in the Product. *Id.*, at 22.

For these reasons, the Survey adequately demonstrates that, at the very least, reasonable consumers were plausibly misled by the Products' advertising.

3.   <u>The SDNY Vanilla Cases Do Not Apply Here</u>

This Court previously acknowledged the differences between the "SDNY Vanilla Cases"

cited by Defendant and the present case. Tr. of Pre-Mot. Conf. 22:19-25, ECF No. 22. Indeed, as the courts residing over the SDNY Vanilla Cases recognize, 'Vanilla' is in a class of its own, where these courts recognize, in cases brought by the same plaintiff's firm, that reasonable consumers associate the term 'vanilla' – not 'pistachio', or 'orange', or 'mint' – with a flavor.

A recent decision in the S.D.N.Y, which was issued ***after*** this Court's ruling on Defendant's pre-motion letter, confirms this distinction. Specifically, in *Kominis*, the plaintiff argued that the naming of Starbucks' Refresher beverages on its in-store menu boards (e.g., Strawberry Acai Refresher), misled reasonable consumers into believing the beverages contained all the named fruits. *Kominis*, 2023 WL 6066199, at *2. The defendant raised the same arguments Cold Stone makes here, invoking the now-dubbed Vanilla Cases to contend that *all* ingredients fall in the same category, and consumers would reasonably expect the purported missing fruits (e.g., acai and mango) in the Refreshers to be mere flavors, not ingredients. *Id.* at *7.

The court expressly rejected the argument presented by Defendant, finding that "***in contrast with the use of the term*** '***vanilla***,' which has been the subject of several prior cases, nothing before the Court indicates that 'mango,' 'passionfruit,' and 'açaí' are terms that typically are understood to represent a flavor without also representing that ingredient." *Id*. at *7 (emphasis added). This is precisely the case here. The missing ingredients in the Cold Stone Products are not vanilla, but commonplace foods and fruits. Consumers reasonably expect the Products to contain these ingredients, just like in *Kominis*.

As demonstrated by the Survey, the vast majority of ice cream purchasers agree with Plaintiff. FAC Ex. A. This is not an absurd expectation, particularly when "other Cold Stone Creamery ice creams and sorbets contain the ingredient stated in their name," such as the strawberry and banana ice creams containing strawberry and banana, respectively. *Id.* ¶ 20. The

same scenario is in *Kominis*, with the beverages in questions containing some of the ingredients stated in their name, but not all. *Kominis*, 2023 WL 6066199, at *2.

The decision in *Kominis* is consistent with several decisions which confirm that the Vanilla Cases uniquely apply to vanilla flavored products advertised and marketed with the term "vanilla." *See, e.g., Cosgrove v. Blue Diamond Growers*, No. 19 CIV. 8993 (VM), 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) ("That association, of 'Vanilla' as a flavor and not an ingredient, is borne out by consumers' practical use of the representation."). For these reasons, the Vanilla Cases are inapposite, as even courts dismissing such cases have noted that Vanilla Cases are in a distinct category as vanilla typically refers to a flavor, not an ingredient. *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) ("However, as in *Steele*, *Pichardo*, and *Cosgrove*, the term [Vanilla] appears to describe a flavor more than an ingredient.")[2]

Defendant's citation to *Cruz v. D.F. Stauffer Biscuit Co.* is unavailing because the plaintiff in *Cruz* admitted that the products did in fact contain lemon and only took issue with the **predominance** of lemon in the cookies. No. 20-CV-2402 (PGG) (JLC), 2021 WL 5119395, at *6 (S.D.N.Y. Nov. 4, 2021), *report and recommendation adopted*, No. 20 CIV2402 (PGG) (JLC), 2022 WL 4592616 (S.D.N.Y. Sept. 29, 2022). Similarly, in *Cosgrove v. Oregon Chai, Inc.*, the plaintiff was led to believe that "Vanilla Chai Tea Latte" was made exclusively from vanilla **beans**. 520 F. Supp. 3d at 570. In contrast, Plaintiff's dispute has nothing to do with the *form* of promised ingredients (e.g., whether the pistachio Products contained whole pistachios or pistachio extract), but rather the existence of the ingredient in its entirety.  FAC ¶ 16.

      a.   <u>The Placards Are Misleading Because They Name Specific Ingredients That are Missing From the Products</u>

---

[2] Referencing three Vanilla cases: *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47 (S.D.N.Y. 2020); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493 (VEC), 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020); and *Cosgrove*, 2020 WL 7211218.

Defendant also argues that because the placards used to identify the Products do not use "made with" language, no reasonable consumer would believe that the Products contain the named ingredients. Mot. at 7-8.[3] This argument is at odds with precedent from this district, the Second Circuit, and the findings of the Survey. The *Campbell* court addressed this issue directly, rejecting the very same argument, noting that "the front label of the product at issue did not say that the crackers were 'made with' graham—whole wheat flour. But the absence of those words is not dispositive." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 382 (S.D.N.Y. 2021). Rather, the *Campbell* court recognized that, "even if 'honey' were intended solely as a reference to the flavor of the Product, a reasonable consumer could expect that the source of the honey flavor was actual honey—an ingredient." *Id.* at 385. Simply put, consumers can plausibly understand something to be both an ingredient *and* a flavor, even if the product does not say "made with." The *Kominis* court recognized the same. 2023 WL 6066199 at *7 (adopting the holding in *Campbell* that the absence of "Made With" does not preclude consumer deception, and finding that "[h]ere too, the words 'mango,' 'passionfruit,' and 'açaí' are words which may indicate a flavor or the presence of an ingredient."); *see also Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) (finding that reasonable consumers could be deceived by the in-store naming of defendant's "Blueberry Bagel"). Thus, the lack of "made with" language on the in-store advertising does not preclude a finding that consumers can plausibly be deceived.

Further, Defendant mischaracterizes *Mantikas v. Kellogg Co.*, as there, the Second Circuit found that the defendant's whole grain claim was deceptive even when it was not preceded by "made with." 910 F.3d 633, 638-39 (2d Cir. 2018) (finding that "a reasonable consumer would

---

[3] Defendant, by repeatedly referring to the "flavor placards," implies that consumers would interpret the placards as identifying *solely* the flavor of the Products when that is not the case *See* Mot. Plaintiff maintains that "flavor" in this context can connote *both* a flavor and ingredient.

likely be deceived" by the defendant's labeling of its product as "'WHOLE GRAIN' **and** 'Made with WHOLE GRAIN'") (emphasis added). Defendant's reliance on *Cruz* also falls short because, there, the court found that the omission of "made with" was relevant to whether consumers reasonably believed the product was ***predominantly*** flavored with real lemon not whether it contained any real lemon. *Cruz*, 2021 WL 5119395, at *6. Defendant's other authorities are similarly distinguishable. *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 247 (S.D.N.Y. 2021) (dismissing plaintiff's predominance claim); *Zaback v. Kellogg Sales Co.*, No. 3:20-CV-00268-BEN-MSB, 2020 WL 6381987, at *3 (S.D. Cal. Oct. 29, 2020) (dismissing claim where product states "'V'nilla Almond' followed immediately below by the words 'Naturally Flavored'").

### b.  The Placards List the Missing Ingredients as Nouns

Defendant's syntactical argument – that the Product placards cannot be misleading because the specified ingredients are adjectives and nouns – is moot because pistachio, mango, coconut, mint, butter and pecan (Products at issue) are exclusively nouns.[4] Without qualifying language such "flavored" they simply are not adjectives. As such, and because "the descriptor is only a noun, dismissal at the pleading stage may not be proper." Mot. at 8 (citing *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 582 (S.D.N.Y. 2021)) (finding that "smokehouse" was used exclusively as a noun and therefore misled reasonably consumers into believing the flavor was derived from a smokehouse, and not an artificial flavor). Even if the Court disagrees with the dictionary's classification of the ingredients as nouns, in context they can only be nouns. Like "smokehouse" in *Colpitts*, the ingredient names stand alone, and except for "orange sorbet" the ingredients do not modify any other noun (for example, "pistachio ice cream"). As a result,

---

[4] *Merriam-Webster's Dictionary*, https://www.merriam-webster.com/ (defining pistachio, mango, coconut, mint, butter, and pecan as nouns only, but defining orange as a noun and an adjective) (last visited Feb. 2, 2024).

consumers read the words on placards for what they are, a pistachio nut, or a mint leaf and not the flavors of those ingredients.

      c.   <u>The Appearance of The Products Supports Consumer's Reasonable Belief That The Products Contain the Represented Ingredients</u>

Next, Defendant fabricates an argument out of thin-air, dedicating a section to why the Products' appearance does not mislead consumers into believing the Products contain their represented ingredients. First, the allegations in the FAC concern the Products' names, not their appearance. *See generally* FAC. Second, even if this were considered, the Products' appearance would only bolster Plaintiff's allegations. Indeed, because Survey respondents were shown images of the Products' names, advertising, and *images of the Products*, the Survey results demonstrate that, based on the *name and appearance* of the Products, consumers expect that the Products contain their represented ingredients. FAC, Ex. A. Thus, Defendant's position, on which it opines without any evidence, is belied by the only piece of consumer evidence in the record.

Further, the case law is not on Defendant's side. Without any explanation as to why, Defendant baldly states that *Izquierdo* and *Kominis* are different from this case because Plaintiff cannot point to "any visual representations." Mot. at 9. To the contrary, as described above, consumers who see the Products, alongside the in-store menu boards and advertising, are misled into believing the Products contain their representation ingredients. In *Izquierdo*, the court found that based on the product's name "Blueberry Bagel", proximity to blueberry muffins with real blueberries, and appearance of blueberries in the product, that a "reasonable consumer is likely to be misled into believing that the bagel's blueberry content consists solely of real blueberries, when in fact the bagel contains primarily imitation blueberries with a lesser quantity of real blueberries." 450 F. Supp. 3d at 461-62. Similarly, in *Kominis*, the court found that considering the "full context of the Product names and advertising, a significant portion of the general consuming public could

reasonably believe that the Products contain the missing fruits." 2023 WL 6066199, at *6.

The same reasoning applies here. Just like the "Blueberry Bagel" in *Izquierdo* or the "Mango Dragonfruit Refresher" in *Kominis*, Defendant sells the Products with the names of the actual ingredients alongside other products that do contain the represented ingredients. FAC ¶ 13. As such, the court cannot determine as a matter of law that no reasonable consumers expect that Defendant's "Pistachio Ice Cream" contains real pistachios or that its "Mango Ice Cream" contains real mango. This is even more reasonable given that it is the case for many competitor products, including pistachio ice cream sold by Ben and Jerry's, Thrifty and Haagen-Dazs. *Id.* ¶ 19.

The fact that no chunks of the represented ingredients are visible is a red herring.  Ice cream can contain a ground, pureed or juiced form of the ingredient that is not readily visible. In fact, Defendant sells several products that do just that – such as its strawberry ice cream which contains real strawberry, or its banana ice cream which contains real banana. *Id.* ¶¶ 13, 15, 19. Indeed, Defendant's strawberry and banana ice cream have no visible "chunks of fruit," yet they ***do contain*** the advertised ingredients. *Id.* at ¶ 15 (depicting Strawberry ice cream, ***which has no chunks***).

At the very least, to the extent the Court finds that Defendant has set forth one interpretation of its advertising, because Plaintiff has set forth an equally plausible (if not more plausible) interpretation of the advertising, the Court should defer to Plaintiff's reading at this stage. *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 97 (S.D.N.Y. 2021) (holding that "at the motion-to-dismiss stage, '[w]here a representation is capable of two possible reasonable interpretations,' the Court is not free to reject 'the misleading one . . . simply because there is an alternative, non-misleading interpretation.'") (citation omitted).

4. <u>Consumers Have No Reason to Believe They Are Being Misled And Are Not Expected to Consult Defendant's Online Ingredient's List</u>

Defendant also contends that if an ice cream consumer had a "lingering doubt" about the Products' contents, they can, essentially, pull out their smart phone in the middle of the line, and go on an internet scavenger hunt for the Products' ingredients. Mot. at 10. This argument fails on all fronts. First, there is no allegation that Plaintiff accessed or viewed the ingredient list. In fact, Plaintiff alleged that she never visited the website before purchasing the Products. *See* FAC ¶ 17 ("Instead, as is revealed by Defendant's ingredient list on its website, ***which Plaintiff did not visit prior to her purchase*** of the Products, the Products are merely flavored after their named ingredients.")[5] (emphasis added).

Second, Defendant's argument presupposes that consumers are confused about the Products' ingredients, which would prompt the need for further inquiry. This is not the case. Not only is the supposed confusion belied by the Survey, but courts have declined to extend such unrealistic expectations for consumers in similar scenarios. *See e.g., Kominis*, 2023 WL 6066199, at *8 ("[A] reasonable consumer should not be expected to ask a store employee whether a product named with multiple ingredients actually contains at least some of those ingredients.").

Lastly, contrary to Defendant's assertion, consumers do not "clearly ha[ve] access" to the ingredients list. Mot. at 10. They are located online, and are not available by, for example, turning a product to see the back label (which still would be insufficient to dispel consumer deception). *See Mantikas*, 910 F.3d at 637 (rejecting the notion that reasonable consumers are expected to verify a defendant's representations on a product's back label). Not only does this distinction render Defendant's citations inapposite, *see, e.g., Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327 (E.D.N.Y. 2018) (finding that consumers can check ingredients list on "another portion of the label"), but Defendant ignores a plethora of caselaw which hold that consumers cannot be

---

[5] Plaintiff's sole purpose for including the ingredient list in the FAC was to demonstrate to the Court that Plaintiff has a source establishing that the represented ingredients are missing.

expected to search for information they are not aware exists, such as information found online. *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 532 (N.D. Cal. 2018) ("It would not be reasonable to expect a consumer to search for disclaimers on a website to clarify a purported misrepresentation on in-store signage."); *Rose v. HP Inc.*, No. 20-CV-02450-VC, 2020 WL 7714532, at *1 (N.D. Cal. Dec. 29, 2020) (holding that "reasonable consumers would be hard-pressed to find" disclosures on defendant's website when purchasing items in-store).

Thus, consumers have no reason to believe that they are being misled and are not expected to consult Defendant's website to confirm the representations made by the name of each Product.

5. <u>Plaintiff's Claims Under the GBL Survive Because Plaintiff Sufficiently Alleged Actual Injury</u>

Defendant contends that "allegations that Plaintiff was damaged by spending money on products that she would not have purchased" absent Defendant's deceptive conduct "is insufficient to allege injury." Mot. at 14. Not so.

Plaintiff has alleged that, "[h]ad she known that the Product did not contain pistachio, she would not have purchased it, or would have paid significantly less for it." FAC. ¶ 5. As several courts have recognized, such allegations are sufficient, ***at the pleading stage***, to allege an injury based on a price premium theory. For example, in *Cooper*,

> Plaintiffs allege[d] that they paid more for the Products "based on the beverage names . . . , reasonably believing that the Products [would] contain tequila, rum, or wine." They also allege[d] that if they had known the Products did not contain tequila, rum, or wine, they would have paid less for the Products or would not have purchased them at all. [The court held that:] At this stage of the case, these allegations suffice to allege a price premium theory of injury.

553 F. Supp. 3d at 109 (internal citations omitted) (citing *Fishon*, 2020 WL 6564755, at *11).

The Second Circuit has held the same, finding that a plaintiff may adequately plead injury under the GBL by alleging that because of the defendant's misleading conduct she did not receive the full value of her purchase. *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015)

(collecting cases) (finding that "the issue of 'price premium' was relevant because it showed that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers"). Other New York courts are in accord. *See, e.g., Izquierdo*, 450 F. Supp. 3d at 464 ("One way to demonstrate [injury]—but not the only way—is to allege payment of a 'price premium,' whereby a plaintiff pays more than she would have but for the deceptive practice."); *Newman v. Bayer Corp.*, No. 22-CV-7087 (KMK), 2023 WL 6318523, at *4 (S.D.N.Y. Sept. 28, 2023) (finding allegations that plaintiff would not have purchased the product or would have paid less for it, but for defendant's false and misleading representation "suffic[ient] to allege a price premium theory of injury") (citation omitted).

Defendant's citations to decisions that found no injury are easily distinguishable. In those cases, the plaintiffs failed to allege that they paid more for the product due to the misrepresentations. *See, e.g., Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 142-43 (E.D.N.Y. 2018) (holding that while "[p]ayment of a premium for a product based on inaccurate representations may be sufficient to allege injury under Sections 349 and 350," the claims failed because the plaintiff "pleaded no facts to support his assertion that [he] paid a premium price"); *see also Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999) (same); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) (same). Here, Plaintiff did not make conclusory allegations about her injury. Instead, Plaintiff alleged that she, like other consumers, "paid a premium price based upon [her] reliance on Defendant's representations that the Products contained specific ingredients." FAC ¶¶ 4, 27.

Lastly, Defendant's argument that Plaintiff's claim fails as a matter of law because she has failed to allege "any facts to support her assertion that Plaintiff paid a premium price, like 'what the premium was, what price [they] paid for the products, or the price of non-premium products,'"

Mot. at 15 (citing *Colella*, 348 F. Supp. 3d at 143), relies on outdated caselaw, as after *Colella*, the Second Circuit and several courts in this District have expressly rejected the need for such allegations. *See Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (holding that plaintiff's "failure to identify the prices of competing products to establish the premium that she paid 'is not fatal to [her] claim' at this stage of the proceedings"); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 198 n.19 (E.D.N.Y. 2018) (noting that weight of authority in Second Circuit "allow[s] complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss").

For these reasons, Defendant's attack is premature, and because Plaintiff has adequately alleged an injury, she should be permitted to conduct discovery and perform a real economic analysis of the price premium. *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017) (holding that attacks on plaintiff's price premium allegations "are factual determination[s] that cannot be resolved on a motion to dismiss").

In sum, Plaintiff has adequately alleged an injury under a price premium theory, and Defendant's has failed to contradict her allegations.

**B.** <u>**Plaintiff Adequately Pled Her Warranty Claims Thus They Should Survive**</u>

As Defendant states, Plaintiff's warranty claims should rise and fall with her GBL claims, Mot. at 15, and for that reason, the Court should refuse to dismiss them.

1. <u>Plaintiff's Express Warranty Claims Are Adequately Pled</u>

First, Defendant argues that it "made no representation [] with regards to the ingredients in the Products." Mot. at 16. However, Plaintiff has alleged (and the Survey supports) the fact that the names of the Products lead reasonable consumers to believe that the Products contain the represented ingredients. FAC ¶ 58. This is sufficient to allege that the names of the Products are factual representations about the Products' ingredients. *See Ackerman v. Coca-Cola Co.*, No. CV-

09-0395 (JG), 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) ("[T]he statements are not merely exaggerated claims of quality or '[s]ubjective claims about products, which cannot be proven either true or false.' Rather, they describe the contents of a food product in ways consumers might reasonably rely on in choosing to purchase vitaminwater.") (citation omitted).

Defendant's authorities don't support its position. For example, in *Wallace*, the products at issue were found not to mislead a reasonable consumer when the products, a potato chip, claimed to be "Cheddar & Sour Cream ***Flavored***." Mot. at 15 (citing *Wallace v. Wise Foods, Inc.*, No. 20-CV-6831 (JPO), 2021 WL 3163599, at *3 (S.D.N.Y. July 26, 2021)). The Products' in-store names don't say flavored. And in *Howze*, the plaintiff argued that he expected a product to contain butter when the product did not even have the word "butter" on the label, but simply because it was advertised as "shortbread." *Howze v. Mondelez Glob. LLC*, No. 22-CV-351 (JLS), 2023 WL 122307, at *5 (W.D.N.Y. Jan. 5, 2023).

Accordingly, this argument – which is predicated on Defendant prevailing on its other arguments – fails.

### 2. Plaintiff's Implied Warranty Claims Are Adequately Pled

Defendant also contends that Plaintiff's implied warranty claim fails because it is not based on allegations that the Products are "unfit to be consumed". Mot. at 17 (first citing *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417 (2d Cir. 2013), then citing *Brumfield v. Trader Joe's Co.*, No. 17-cv-3239 (LGS), 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018)). Defendant misunderstands Plaintiff's claim for breach of implied warranty. Plaintiff's implied warranty claim is based on N.Y. U.C.C. § 2314(2)(f) which expressly provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." *See* FAC ¶¶ 65-72. As recognized by the courts, allegations that the products do not conform to their promises is sufficient to state a claim for breach of implied warranty under §

19

2314. *Kominis*, 2023 WL 6066199, at *8 (rejecting argument that implied warranty claim under §

2314 fails when the product is not unfit for human consumption, as the "language of" the

"provision" requires that "goods '[c]onform to the promises or affirmations of fact made on the

container or label if any.'").

Moreover, when an "implied warranty of merchantability cause of action is based solely

on whether the product in dispute conforms to the promises or affirmations of fact on the packaging

of the product, the implied warranty of merchantability claim rises and falls with express warranty

claims brought for the same product." *Hesse*, 463 F. Supp. 3d at 470 (internal quotation marks

omitted). Defendant's case law fails to support its position. Specifically, both cases evaluate

plaintiffs' breach of implied warranty through the lens of N.Y. U.C.C. § 2314(2)(c), and neither

case discusses the subsection on which Plaintiff's claim is premised, subsection (f). *Caronia*, 715

F.3d at 433; *Brumfield*, 2018 WL 4168956, at *3. As such, the cases are inapposite.

### C.   Plaintiff Has Adequately Pled A Claim For Unjust Enrichment

Finally, Defendant's claim that Plaintiff's unjust enrichment claim should be dismissed

because it is duplicative falls short, as "[t]he elements for an unjust enrichment claim are distinct

from the elements for GBL claims under §§ 349 and 350." *Warner v. StarKist Co.*, No. 1:18-cv-

406-GLS-ATB, 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019). Regardless, even if the Court

found Plaintiff's unjust enrichment claims to be duplicative of her other claims, Fed. R. Civ. P.

8(a)(3) "expressly permit[s] plaintiffs to plead in the alternative, and the law is well settled in this

regard." *Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*, No. 14-cv-9992-SAS, 2015 WL

4190746, at *5 (S.D.N.Y. July 10, 2015).

### V.   CONCLUSION

For these reasons, Plaintiff respectfully requests the Court deny Defendant' Motion.

DATED: February 2, 2024

**TREEHOUSE LAW, LLP**

By: ___/s/ *Joshua Nassir*___
Joshua Nassir (admitted pro hac vice)
(CA SBN 318344)
2121 Avenue of the Stars, Suite 2580
Los Angeles, CA 90067
Telephone: (310) 751-5917
jnassir@treehouselaw.com

**CUSTODIO & DUBEY, LLP**
Robert Abiri (SBN 238681)
*E-mail: abiri@cd-lawyers.com*
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899

*Attorneys for Plaintiff and the
Putative Class*